[Crim. No. 4419.   In Bank.   May 3, 1943.]

## THE PEOPLE, Respondent, v. GEORGE KELLEY, Appellant.

Morris Lavine for Appellant.

Earl Warren, Attorney General, and Lewis Drucker, Deputy Attorney General, for Respondent.

EDMONDS, J.—George Kelley complains that his conviction upon the charge of occupying an apartment for the purpose of bookmaking, contrary to the provisions of section 337a, subdivision 2, of the Penal Code, was obtained by the use of evidence received in violation of section 605 of the Federal Communications Act (Act of June 19, 1934, c. 652, 48 Stat. 1064, 1103, 47 U.S.C. 605, 47 U.S.C.A. 605.) Upon appeal, he challenges an order denying him a new trial upon grounds which raise questions concerning constitutional rights and also the scope of the federal statute.

According to the testimony of police officers, they knocked on the door of an apartment two or three times before it was opened by the appellant. Although he told them that, for several hours, he had been sitting in the room reading, the venetian blinds were closed and the room was quite dark. They immediately noticed that the telephone wires were disconnected, but a few minutes before, they had heard the bell of the instrument ring. Upon reconnecting the wires, the bell rang at least 50 times during the two hours they remained there.

One of the officers testified that when he answered the telephone "The voice said 'Hello, Jimmy?' And I said 'Yes.' He said 'This is Walter, give me three to win on 326.' " Upon the next call "it said 'This is Marge,' and asked for George. It said 'This is Marge, one to place on Even Mix,

one to place on Lady Vain.' '' The next time the caller said '' 'This is Mich, I want a combination bet on 301 to 344, one across.' '' Again the bell rang, the officer testified. ''A voice said 'This is Dove, George, I want two across on a parlay on Downy Billow to Mt. Vernon II,' and the next time a lady's voice said 'This is Helen, give me the following bets: 633, one to place, one to show, insured; 647 parlayed to 633, one to place; 685 parlayed to 722, one to place; 671, one to place insured; 685 parlayed to 722, two to place.' '' According to the witness, he had a record of a number of other messages of the same character received by him while he was in the apartment, the appellant being seated about eight feet from the telephone.

The officers also stated that the appellant first told them his name was Jimmy. However, when they repeated a telephone conversation in which the person calling asked for Jimmy, Kelley then said his name was George. He had a key to the apartment. In a drawer near the telephone and in a desk in another room, the officers found blank betting markers, of a common type used for the recording of the name, number, number of a horse, and the amount of the wager. After the officers entered the apartment, they reconnected the radio and, without changing the selection dial, they heard the results of horse races being broadcast.

To explain the messages received over the telephone, one of the officers, who said he knows the methods by which bookmaking is conducted, testified that he compared the numbers, names and symbols given by the callers on the telephone with certain racing bulletins. He found that each horse mentioned by them was racing on that particular day at ''Keeneland'' or ''Bay Meadows,'' which are race tracks in the United States.

The appellant asserts that the evidence is insufficient to support the verdict. More specifically, he contends that the admission in evidence of intercepted telephone messages without the consent of the sender was in violation of section 605 of the federal statute and of the Fourteenth Amendment to the Constitution of the United States; that this evidence was obtained by unlawful search and seizure in violation of article I, section 19, of the California Constitution, and the Fourteenth Amendment to the Constitution of the United States; and that other evidence was erroneously received against him.

Answering these contentions, the attorney general takes the position that the Federal Communications Act, *supra*, is a rule of evidence concerning federal officers and federal courts and does not prohibit the admission in a state court of evidence obtained over the telephone by state officers. He also maintains that the admission of intercepted telephone conversations by the courts of California is not in violation of its Constitution, nor of that of the United States. Accordingly, he says the evidence amply justifies the conviction of the appellant. In support of the judgment, he urges that it was not necessary for the prosecution to prove the corpus delicti beyond a reasonable doubt before receiving evidence of admissions, a prima facie showing only being all that is required.

Concerning other points relating to the rulings upon evidence, the People insist that the officer did not state the meaning of the signs and symbols which are shown in the evidence offered to prove bookmaking except to explain the meaning of the word "insured" in betting parlance, and to identify the two race tracks. And it is said that if the court erred in permitting the officers to use scratch sheets which they had procured elsewhere as the basis of their testimony relating to the races run on the day the appellant was arrested, such error was harmless, since the conviction may stand without that evidence.

Although the federal courts forbid the introduction of evidence illegally obtained from the accused upon his timely motion for its exclusion (*Nardone* v. *United States*, 308 U.S. 338 [60 S.Ct. 266, 84 L.Ed. 307]; *Byars* v. *United States*, 273 U.S. 28 [47 S.Ct. 248, 71 L.Ed. 520]; *Go-Bart Importing Co.* v. *United States*, 283 U.S. 344 [51 S.Ct. 153, 75 L.Ed. 374]; *Gouled* v. *United States*, 255 U.S. 298 [41 S.Ct. 261, 65 L.Ed. 647]; *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385 [40 S.Ct. 182, 64 L.Ed. 319]; *Weeks* v. *United States*, 232 U.S. 383 [34 S.Ct. 341, 58 L.Ed. 652]; *Boyd* v. *United States*, 116 U.S. 616 [6 S.Ct. 524, 29 L.Ed. 746]), the accepted rule in most of the states, including California, is to the contrary. (*People* v. *Gonzales*, 20 Cal.2d 165 [124 P.2d 44], certiorari denied by U. S. Supreme Court, 317 U.S. 657 [63 S.Ct. 55, 87 L.Ed. 528]; *Herrscher* v. *State Bar*, 4 Cal.2d 399 [49 P.2d 832]; *People* v. *Mayen*, 188 Cal. 237 [205 P. 435, 24 A.L.R. 1383]; *People* v. *LeDoux*, 155 Cal. 535 [102 P. 517], for cases from other jurisdictions see note 88 A.L.R. 348.) The policy underlying the majority doctrine is said to be that courts

should not be required collaterally to investigate the source from which prosecutors have obtained evidence otherwise admissible. (*People* v. *Mayen, supra,* pp. 251, 254, 255.)

█ In the recent case of *People* v. *Gonzales, supra,* the California cases involving the admissibility of evidence obtained by unlawful search and seizure were reviewed, and the court considered the question whether the use of evidence so secured was a denial of due process of law guaranteed by the Fourteenth Amendment. It was concluded that the use of evidence obtained through an illegal search and seizure does not violate due process of law because it does not affect the fairness or impartiality of the trial. The fact that an officer acted improperly in securing evidence presented against a defendant does not prevent the court from rendering a fair and impartial judgment.

This decision is determinative of the contentions made by the appellant to the contrary, although it is not a complete answer to the problem. For in the present case, because the challenged evidence consists of the reports of telephone conversations, a broader question is presented, requiring a construction of the Federal Communications Act (*Supra.*)

█ The appellant contends that not only were the contents of the telephone messages procured by means within the prohibitions of the statute, but also that they are inadmissible because they were offered in evidence by means of a witness who, in testifying, violated that law.

Section 605 of the Federal Communications Act provides as follows: " . . . no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; . . . and no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto . . ."Assuming that the statute applies to evidence offered in a state court, the admissibility of the testimony given by the officers primarily depends upon the status of the appellant. Is he a person en-

titled to the protection of the act against the divulgence of the telephone messages in question?

In *Nardone* v. *United States*, 302 U.S. 379 [58 S.Ct. 275, 82 L.Ed. 314], the court held that the government's introduction of transcripts and recordings of intercepted interstate messages as evidence in the trial of a criminal case constituted a divulgence of such messages contrary to the express terms of the statute. In *Weiss* v. *United States*, 308 U.S. 321 [60 S.Ct. 269, 84 L.Ed. 298], intrastate telephone communications were intercepted by federal agents, and their contents were repeated to certain of the defendants. As a result these defendants confessed and testified for the government. The court decided that the statute prohibits the divulgence of intrastate as well as interstate messages. It further held that the witnesses' testimony concerning the contents of the messages was not an authorization by them, as the senders of the messages, within the contemplation of the statute.

*Nardone* v. *United States*, 308 U.S. 338 [60 S.Ct. 266, 84 L.Ed. 307], is another case in which the same statute was considered. Reversing a judgment of conviction, the court held that testimony induced as a result of unlawful interception and use of the telephone messages was inadmissible, and the introduction of the evidence so obtained, over the objections of the defendants, who were the senders, constituted a violation of the purpose and policy of the statute. *Goldstein* v. *United States*, 316 U.S. 114 [62 S.Ct. 1000, 86 L.Ed. 1312], was presented upon a record similar to that in the second Nardone case, but the defendants were not parties to the communications used to induce two co-conspirators to become prosecution witnesses. The question for decision, said the court, was whether it should extend the sanction for violation of the Communications Act so as to make available to one not a party to the intercepted communication the objection that such use outside the courtroom, and prior to the trial, induced evidence which would otherwise be admissible. No court has ever gone so far, it observed, in applying the implied sanction for violation of the Fourth Amendment to the federal Constitution and, on the contrary, ". . . the federal courts in numerous cases, and with unanimity, have denied standing to one not the victim of an unconstitutional search and seizure to object to the introduction in evidence of that which was seized." For that reason, it was held, no broader

sanction should be imposed for a violation of the Communications Act, *supra.* And as a divulgence of the intercepted messages may lawfully be made with the consent of the sender, none but he was intended to be protected. Therefore, although the prosecuting officers violated the statute in using the messages to induce the parties to them to testify, the testimony was admissible against one not a party to the intercepted communication.

Under these decisions of the United States Supreme Court, although intrastate messages come within the terms of the statute, the appellant in the present case is not a "sender" entitled to its protection. True, in *Goldstein* v. *United States, supra,* the court referred to *United States* v. *Polakoff,* 112 F.2d 888, where it was held that each of the persons engaging in a telephone conversation is a sender within the meaning of the Act. "Every telephone talk," said Judge Learned Hand, "like any other talk is antiphonal; each party is alternately sender and receiver and it would deny all significance to the privilege created by section 605 to hold that because one originated the call he had power to surrender the other's privilege. . . . It is impossible satisfactorily to dissect a conversation, and the privilege is mutual; both must consent to the interception of any part of the talk." But this reasoning is not applicable to the testimony of the officers who related what was said to them when they answered the telephone in the apartment where Kelley was arrested. There was no interchange of conversation in which one person referred to what the other had just said; indeed, there was no answer so far as the appellant is concerned.

Kelley asserts that the telephone messages would be relevant only if they were intended for him. Yet assuming that the persons who called on the telephone intended their messages to reach Kelley, since he in fact was not a party to the conversations, he is in the same position as the addressee of a telegram. And Judge Hand, in the Polakoff case, stated, as being beyond reasonable dispute, that the sender of a telegram may consent to its interception "even though that prejudice the addressee." Therefore the appellant could not be a "sender" even within the broad definitions given by Judge Hand. And only the "sender" of a communication, said the United States Supreme Court, is entitled to the protection of the statute.

Other points presented by the appellant concerning the admission of evidence include his assertion that the court

erred in allowing the police officer to explain the meaning of the term "insured" in one of the telephone messages and in testifying that Bay Meadows and Keeneland were race tracks operating in the United States on the day of the appellant's arrest. His contention in this regard is supported by *People* v. *Davis,* 47 Cal.App.2d 331 [117 P.2d 917]. There, as in the present action, a witness testified that, for a considerable period of time, he had investigated bookmaking establishments and was familiar with the manner in which bookmaking commonly was conducted in the community; also, that he had testified in court concerning the interpretation of bookmaking signs and symbols on numerous occasions. But assuming that the admission of the evidence against Kelley was erroneous, the error was not prejudicial. Since the conversations received by the officers after reconnecting the telephone were properly admissible to prove the use of the occupied premises (*People* v. *Joffe,* 45 Cal.App.2d 233 [113 P.2d 901]; *People* v. *Reifenstuhl,* 37 Cal.App.2d 402 [99 P.2d 564]), the messages received by the officer, excluding the terms which he explained, amply support the verdict of the jury.

The testimony of the officer that racing bulletins named the horses mentioned in the telephone conversations as entrants in races run on the day Kelley's apartment was entered was erroneously admitted, the appellant argues. Being hearsay, no inference could legally be drawn from it concerning races run on that day. But again the error is harmless, since it is immaterial whether the races were run. (*People* v. *Hinkle,* 64 Cal.App. 375 [221 P. 693]; *People* v. *Carroll,* 54 Cal.App. 684 [202 P. 885].) The corpus delicti of the crime charged is established by proof that the appellant occupied a room with bookmaking paraphernalia for the purpose of recording or registering bets upon horse races. (Pen. Code Sec. 337a (2).)

The order is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., and Traynor, J., concurred.

CARTER, J.—I dissent. The majority opinion misconstrues the provisions of the Federal Communications Act, and the authorities upon which it relies in support of its interpretation of said act clearly hold that evidence of the character here involved is inadmissible because obtained in violation of the provisions of said act.

The defendant was convicted of occupying an apartment for the purpose of bookmaking upon evidence received in violation of the Federal Communications Act. (47 U.S.C.A. 605.) Police officers were admitted to the apartment occupied by defendant. The telephone in the apartment rang many times while the officers were there. Evidence was admitted showing that while the defendant was seated about eight feet from the telephone the officers answered the telephone on many occasions when it rang. One one of such occasions the voice on the phone inquired if it was Jimmy, to which the officer replied, "Yes." On other occasions the communicants stated wagers they desired to make.

The Federal Communications Act provides:

". . . and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; *and no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto;* and no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto; . . . " (Emphasis added.) (47 U.S.C.A. 605.)

At the outset it should be observed that the rule with reference to the admissibility of evidence obtained in violation of the constitutional prohibition against unlawful searches and seizures considered in *People* v. *Gonzales,* 20 Cal.2d 165 [124 P.2d 44], is not here involved. That constitutional guarantee does not make it a crime to give testimony obtained in violation thereof. The chief basis of such evidence not being admissible is to prevent a violation of that constitutional guarantee; if such evidence is admissible it would encourage violations. However, under the Federal Communications Act it is made a crime and punishable as such to divulge or suffer to be divulged the information obtained in violation of the act. Section 501 reads:

"Any person who willfully and knowingly does or causes or suffers to be done any act, matter, or thing, in this chapter prohibited or declared to be unlawful, or who willfully and knowingly omits or fails to do any act, matter, or thing in this chapter required to be done, or willfully and knowingly causes or suffers such omission or failure, shall, upon conviction thereof, be punished for such offense, for which no penalty (other than a forfeiture) is provided herein, by a fine of not more than $10,000 or by imprisonment for a term of not more than two years, or both." (47 U.S.C.A. 501.) The giving of evidence as to the nature and substance of a communication obtained contrary to the act would be a divulgence thereof and would be a crime committed in the actual presence of the court at the trial, a situation that should not be tolerated under any circumstances.

The question is, therefore, whether section 605 was violated in the instant case. The majority opinion, holding that there was no violation, is based upon two propositions (consideration to which will be hereinafter given); that is, that the act was only for the protection of the sender and that there was no interception of the telephone message. But even if those propositions are accepted there still remains the second separate and independent clause in the foregoing quotation from section 605 which declares unlawful the receipt and use by a person not entitled thereto of a communication. Repeating, that clause reads: ". . . no person not being entitled thereto *shall receive* . . . any communication . . . and use the same . . . for the benefit of another not entitled thereto; . . ." Hence, the intended *recipient* of the communication is protected against unauthorized persons receiving his message. It thus becomes immaterial whether the sender only is protected by the preceding clause appearing in the section as heretofore quoted or whether there has been an interception within the meaning of that clause, because the clause here in question unequivocally protects the recipient of the message and interception is not required, if that term be limited to mean listening to the message before it reaches the mouthpiece of the receiving telephone as held in the majority opinion. The wording of the clause now discussed clearly applies to the facts in the instant case. The officers *received* the messages over the telephone. They were not entitled to do so under the Federal Communications Act, the message being intended for defendant. Defendant did not authorize them to receive it. The message was *used* by the officers when they testified at

the trial. They *used* it for the benefit of another, namely, the State. The State was not entitled to it. Therefore, the giving of the testimony at the trial constituted a crime.

The statement apparently contrary to the foregoing views in *Sablowsky* v. *United States,* 101 F.2d 183, was made merely in passing. It was there said that the clause in question "obviously refers again to employees of communication agencies." It does not necessarily exclude the possibility that other persons may be included.

It has been held that all of the clauses in section 605 apply to communications in intrastate as well as interstate commerce (*Weiss* v. *United States,* 308 U.S. 321 [60 S.Ct. 269, 84 L.Ed. 298]); therefore, the clause here discussed applies in the instant case. The case of *Goldstein* v. *United States,* 316 U.S. 114 [62 S.Ct. 1000, 86 L.Ed. 1312], expressly reserves for future determination the question of the scope of the clause above discussed.

If it be assumed that the clause heretofore discussed is not applicable to the instant case, the first clause appearing in the above-quoted portion of section 605 is clearly available. It is there provided that no person not authorized by the *sender* shall divulge a telephonic communication. The United States Supreme Court has stated in *Goldstein* v. *United States, supra,* that the clause is designed only for the protection of the sender, but that statement is dictum inasmuch as in that case defendant was neither the sender nor the recipient of the message; he was not a party to it. The court stated the question involved at page 1004:

"The question now to be decided is whether we shall extend the the sanction for violation of the Communications Act so as to make available to one *not a party* to the intercepted communication the objection that its use outside the courtroom, and prior to the trial, induced evidence which, except for that use, would be admissible." (Emphasis added.) And in conclusion at the same page:

"We are of the opinion that even though the use made of the communications by the prosecuting officers to induce the parties to them to testify were held a violation of the statute, this would not render the testimony so procured inadmissible against a person *not a party to the message.* This is the settled common-law rule. There was no use at the trial of the intercepted communications, or of any information they contained as such. If such use as occurred here is a

violation of the act, the statute itself imposes a sanction."
(Emphasis added.) In the case at bar the defendant was a
party to the conversation and invokes the statute. True, the
officers rather than defendant answered the telephone, but
the communication was intended for him and he was the
only party entitled thereto. The presence of the officers pre-
vented him from receiving the message. If it were not in-
tended for him as the occupant of the apartment, the evi-
dence would be of no value or aid on the issue of defendant's
guilt. Furthermore, the Goldstein case cites with approval
*United States* v. *Polakoff*, 112 F.2d 888, 889, where it is said:

"The word, 'sender,' in section 605 is less apt for a tele-
phone talk than for a telegram, as applied to which there can
be no doubt of its meaning. If a man sends a telegram, he
may consent to its interception even though that prejudice
the addressee, as conceivably it might; but if the addressee
answers by telegram, he alone can give a valid consent to the
interception of the answer. He has a privilege like the sender,
which is as immune from surrender by the sender's consent,
as the sender's privilege as to the first message was from
surrender by his consent. So far there can be no reasonable
dispute. *Every telephone talk, like any other talk, is antiph-
onal; each party is alternately sender and receiver and it
would deny all significance to the privilege created by section
605 to hold that because one party originated the call he had
power to surrender the other's privilege.* There cannot be the
least doubt of this as to the answers of the party called up;
and while it might indeed be pedantically argued that each
party had the power to consent to the interception of at least
so much as he said, that would be extremely unreal, for in
the interchange each answer may, and often does, imply by
reference some part of that to which it responds. It is im-
possible satisfactorily so to dissect a conversation, and the
privilege is mutual; both must consent to the interception of
any part of the talk." (Emphasis added.) While it is true
in the instant case that there were no answers by defendant
inasmuch as the officers answered the telephone calls, he was
the intended recipient and the calls would have no relevancy
unless they were intended for him as an occupant of the
apartment.

It is equally clear that the message was *intercepted* by
the officers. It is fantastic to argue that there is no intercep-
tion where the communication has reached the receiving tele-
phone. It had not completed its course until it reached de-

fendant, the person for whom it was intended. If the officers had not answered the calls, defendant presumably would have done so. It may not be said with any realism that tapping a wire 1/100 of an inch before it reaches the telephone receiver is an interception, but actually listening to the conversation on the receiver without the consent of the intended recipient is not. The language in *United States* v. *Gruber*, 123 F.2d 307, 309, is pertinent:

"A hearer not contemplated by the parties to the conversation was introduced without their consent. It can make no difference that the person divulging did not know the contents of the message. Whether he was never engaged in listening or could not understand the communication, so long as he caused it to be transmitted to a third party without the consent of the sender, he intercepted and divulged the communication and violated the statute as surely as though *he had abstracted a telegram from a Western Union Office and delivered it to some third party.*" (Emphasis added.) In the instant case the officers abstracted the communication from the receiver and divulged it in court.

The view that the officers intercepted the communication in the instant case is borne out by *Goldman* v. *United States*, 316 U.S. 129 [62 S.Ct. 993, 86 L.Ed. 1322]. Although it was there held that the act did not extend to an eavesdropper listening to the one sending the message, the court, in discussing the meaning of the term interception, said at page 995:

"It does not ordinarily connote the obtaining of what is to be sent before, or at the moment, it leaves the possession of the proposed sender, or after, or at the moment, it comes into the possession of the *intended receiver*. The listening in the next room to the words of Shulman as he talked into the telephone receiver was no more the interception of a wire communication, within the meaning of the act, than would have been the overhearing of the conversation by one sitting in the same room." (Emphasis added.) Here the message had not come into the possession of defendant, the intended receiver. It was intercepted by the officers. The act of the officers was an interference with the instrumentality, the telephone receiver, in using it to receive a message to which they were not entitled. In the Goldman case there was no such interference with the instrumentality, the telephone receiver, in using it to receive a message to which they were not entitled. In the Goldman case there was no such inter-

ference with the instrumentality, and the eavesdropping perpetrated therein did not constitute a violation of the Federal Communications Act.

We are not here concerned with the legislative policy which prompted the enactment of the Federal Communications Act, but only with its interpretation as applied to the facts of this case. In my opinion, the construction placed on the quoted provisions of the act by the majority opinion is clearly contrary not only to the plain and unambiguous language contained in the act as interpreted by the decisions of the Supreme Court of the United States, but also the object and purpose to be accomplished thereby. It is not a sufficient answer to say that the act was not intended to protect persons against prosecution who are engaged in unlawful pursuits, as Congress could have provided an exception in those cases if it had been disposed to do so.

The obvious purpose in adopting the statute was to guarantee protection to persons sending and receiving communications against meddlers, snoopers and inquisitors, regardless of the motive or purpose of those seeking to intercept communications intended for another. To say that the act does not apply to the factual situation in the case at bar is to ignore the plain language in the act and place a strained construction upon the statute as a whole.

In my opinion, the evidence relating to telephonic communications was clearly inadmissible, and the judgment should therefore be reversed.

Peters, J. pro tem., concurred.

Appellant's petition for a rehearing was denied June 1, 1943. Carter, J., and Schauer, J., voted for a rehearing.