[Crim. No. 4065.   Second Dist., Div. Three.   June 17, 1947.]

THE PEOPLE, Respondent, v. MALCOLM JACKSON, Appellant.

Malcolm Jackson, in pro. per., for Appellant.

Fred N. Howser, Attorney General, Frank Richards, Deputy Attorney General, W. E. Simpson, District Attorney, Jere J. Sullivan and Robert Wheeler, Deputy District Attorneys, for Respondent.

WOOD, J.—Defendant was charged with the crime of pandering. He admitted the allegations of the information that he had been convicted of felonies three times previously and had served terms in penitentiaries therefor. In a jury trial herein he was convicted of attempted pandering, "a lesser included offense as charged in the information." Defendant appears in propria persona on this appeal. His purported notice of appeal states in part that "I am making a motion for appeal," and that the "Motion is to appeal the verdict of guilty of Attemp— Pandering & was sentenced by you on June 21st 1946." It will be regarded as an appeal from the judgment.

Appellant's contention that the evidence was insufficient to support the judgment is not sustained. About April 1, 1946, appellant went to a photograph studio where the complaining witness, Miss Cooper, was employed, and gave her a telephone number and told her to call him. He returned that afternoon and told her he knew where she could get another job which would pay more money. When she asked him what work it was he said, "call house." Two days later appellant and a girl went to see her and he told her that she could get more money working in a house of prostitution; that he wanted her to go to his apartment to work for him; that she was to have sexual intercourse with men; that she could make $300 or $400 a week "turning tricks." About a week later he gave her a suit of clothes. Soon thereafter a note, which was in his handwriting, was delivered to her by a girl, and the note stated: "This is the key and address. I*ts* for the upper lock. You can just forget about these . . . jobs up here altogether, and I am expecting you tonite." With the note there was a key to which was attached a ticket, reading "510-½ East Fifth Street, Apartment 405." Another note in his handwriting, which was delivered to her at another time by a girl, stated: "The sooner you can get away the better. I've had a couple of pretty fair deals but couldn't hold them until 11:30. 'Phone me and I will tell you all about things. This kid works out of the place at times." She received four notes from him. On April 12, 1946, he returned

in an automobile and gave her his telephone number. She telephoned to him about 4 p. m., and he said he wanted her to leave her work then and go to his apartment because he had a trick for her. She replied that she could not get away until 11:30 p. m.

After she received the first note above mentioned she reported the matter to the police. A police officer instructed a Miss Paige to go with Miss Cooper to appellant's apartment. It was arranged that a police officer would follow them there, and that other officers would go to the vicinity of the apartment and await developments. About 10:30 p. m. on April 12, 1946, Miss Cooper and Miss Paige met for the first time. They left the studio about midnight and were walking down Fifth Street when appellant came along in an automobile, stopped and asked them to get in, and they got in the back seat. He said they were going to a bar for a few minutes. Appellant said something about prostitution and "turning tricks," and Miss Paige, in compliance with instructions from the police, told him she wanted to make some money and asked if she could stay in his room and work for him. He said that they were to live in his apartment and to "take tricks" there. They were taken to a saloon four doors from his room where they stayed about twenty minutes. He introduced the girls to the bartender and told him they were going to work for appellant; that Paige would work in the bar as a front while actually "taking calls," and Cooper would stay in his apartment. He also introduced a colored man to Cooper and said he was the man who wanted to come up. Then appellant and the girls went to his room, number 405, at 510½ East Fifth Street, and he unlocked the door. On the way there he paid the landlady $5.00 and the girls signed the register for two other rooms. When they were in his room he told them they were to "turn tricks" in his room every evening, and that the colored man in the saloon was a steady customer for sexual intercourse and was one who would give Cooper $10, and that appellant would take $5.00 of that amount. He then left the room, stating that he was going to the bar to get that man, and in a few minutes he returned with him. Appellant told Cooper, in the presence of the man, that she was to have sexual intercourse with that man for $10, and he told Paige that there was another man for her down the hall. At that time the police officers entered the room and arrested appellant.

A police officer testified that he saw appellant and the two girls enter said room 405; that about twenty minutes later he saw appellant leave the room; that about five minutes thereafter he saw appellant and another colored man enter the room; that he (the officer) knew the reputation of the place at 510½ East Fifth Street, and that its reputation was that it was frequented quite often by prostitutes and was a place where prostitution was carried on.

Another police officer testified that the hotel at said address had a reputation of being a place where prostitution was carried on; that eighteen arrests for prostitution had been made upon those premises during the past two years. Appellant had been living in said room more than a year prior to the time he was arrested.

█ The statute under which this prosecution was had (Stats. 1911, p. 9; Deering's Gen. Laws, 1937, Act 1906, p. 970), provides: "Any person who shall procure a female inmate for a house of prostitution, or who, by promises . . . or by any device or scheme, shall cause, induce, persuade or encourage a female person to become an inmate of a house of prostitution, or shall procure for a female person a place . . . as an inmate of any place in which prostitution is encouraged or allowed within this state . . . shall be guilty of a felony, to wit: pandering. . . ." It is provided in section 1159 of the Penal Code that: "The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense." It is clear that the evidence was sufficient to justify findings that the place in question was a house of prostitution; that appellant knew it was such a place; and that he attempted to procure Miss Cooper to become an inmate thereof.

Appellant contends that since he had admitted the prior convictions the prosecution should not have alluded to them by asking him on cross-examination whether he had been convicted of a felony. His counsel called him as a witness and he testified. He denied that he said anything to Cooper about her working in a house of prostitution; denied that anything was said about either of the girls turning tricks; denied that he brought any man to either of the girls for the purpose of prostitution; and denied that he told Cooper the colored man was a steady customer. After he had so testified the deputy district attorney asked him, on cross-examination, if he had

ever been convicted of a felony, and he replied that he had. Then he asked him how many times, and he replied three. Then he asked him what they were, and he said two burglaries and narcotics. Then he asked when, and he replied 1924, 1928, and 1939. When asked if all those were felonies, he said that was right. ■ Appellant argues that those questions alluded to his prior convictions in violation of the provisions of section 1025 of the Penal Code. That section provides: "When a defendant who is charged in the . . . information with having suffered a previous conviction, pleads . . . not guilty of the offense for which he is . . . informed against, he must be asked whether he has suffered such previous conviction. . . . In case the defendant pleads not guilty, and answers that he has suffered the previous conviction, the charge of the previous conviction must not be read to the jury, nor alluded to on the trial." That section is to be considered in connection with the provisions of section 2051 of the Code of Civil Procedure which provides that: "A witness may be impeached by the party against whom he was called . . . but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness . . . that he had been convicted of a felony." Section 1025 of the Penal Code was not designed to prevent the impeachment of a defendant on cross-examination by proof of conviction of a felony. (*People* v. *Peete,* 28 Cal.2d 306, 319, 320 [169 P.2d 924].) The questions on cross-examination herein concerning the prior convictions were proper. Furthermore, no objection to any of those questions was made at the trial.

■ Appellant's contention that he was entrapped by the police is not sustained. Insofar as Miss Cooper was concerned the police did not in any manner instigate the crime or lure the defendant into its commission. The criminal intent and design originated in the mind of defendant. He went to see her in the first instance and several times thereafter, wrote her four notes, gave her a key, and represented that she could make big money, in an effort to persuade her to become an inmate of a house of prostitution.

■ He contends also that he was unlawfully convicted because his arrest was made without a warrant, and because evidence was obtained by unlawful search and seizure. This contention is not sustained. The officers were authorized to arrest the appellant at night without a warrant, there being reasonable cause to believe that he had committed a felony. (Pen. Code, § 836, subd. 5.) ■ It does not appear that

evidence was obtained by unlawful search and seizure. Even if evidence had been so obtained it would have been admissible. (*People* v. *Gonzales*, 20 Cal.2d 165, 169 [124 P.2d 44].)

Appellant asserts in his brief that he has appealed also from the order denying his motion for a new trial. It will be assumed that he has so appealed.

The judgment and the order denying his motion for a new trial are affirmed.

Shinn, Acting P. J., and Kincaid, J. pro tem., concurred.

A petition for a rehearing was denied July 1, 1947.