[Crim. No. 4387. In Bank. Mar. 23, 1942.]

THE PEOPLE, Respondent, v. MAURICE LOUIS BRIGGS, Appellant.

James O. Warner for Appellant.

Earl Warren, Attorney General, and Gilbert F. Nelson and Frank Richards, Deputies Attorney General.

EDMONDS, J.—Maurice Briggs has been convicted of the crime of murder in the first degree and sentenced to death. Upon his appeal from the judgment and from the order denying his motion for a new trial, he admits that he shot and killed Nat Rosenberg, but he complains of rulings of the judge upon evidence and asserted misconduct of the district attorney during argument to the jury which, he asserts, amount to prejudicial error.

The information included charges of two prior convictions of a felony. After he admitted these convictions and pleaded not guilty, and also not guilty by reason of insanity, a jury found him guilty without including in its verdict any recommendation concerning the punishment to be imposed for the crime. A trial upon the issue of insanity followed and resulted in a verdict by the same jury finding that the appellant was sane at the time the homicide was committed.

The fatal shooting occurred at the place of business of Cotton Products Corporation, where the appellant was previously employed. Rosenberg, who was also known as Nat Ross, was night foreman of the plant. A short time before, Briggs had married a fellow employee. They lived together only two months, when they separated, and she returned to her employment. On the night of the homicide, she was at work in the processing room.

Four witnesses to the crime testified at the trial. The appellant was seen at the entrance to the building three times during the course of the evening and finally, shortly after ten o'clock, he told one of the employees to call Rosenberg as he wished to see him. Rosenberg left his work and walked towards the door. When he was within about ten feet of it, Briggs reached outside, grasped a rifle, and shot him. Rosenberg fell backwards on the floor. Briggs then strode inside the room and, pointing the gun at him, fired another shot from a distance of about two feet. No word had been spoken by either man.

About thirty minutes later, two policemen arrested Briggs as he stood on a street corner two blocks away. One of them testified that in response to his question, "Well, how do you feel about it now?" the appellant replied: "Sorry I cannot do it again." Later that night, Briggs was questioned by other officers. According to the transcript of his statement at that time, they asked him when he first planned to kill Rosenberg.

"About three weeks ago," said Briggs, "I was figuring on working him over. I don't know whether I was figuring on killing him but I probably would have if I was able to with my hand, and I thought maybe I couldn't do a good enough job that way." "Had you definitely made up your mind that you would kill him?" they then asked. "Yes," answered Briggs.

At his trial, the appellant took the stand and admitted that he shot Rosenberg. It was before noon, he said, when he purchased the rifle, but he arranged to leave the gun at the store until five o'clock. From another store he bought five shells. In the late afternoon, he called for his gun, carried it down to the plant of the Cotton Products Corporation and hid it back of an adjoining apartment building. He then placed himself at a vantage point from which he could observe the entrance to the factory.

He had bought the gun, he testified, because a few evenings before, he had seen his wife leave the factory with Rosenberg in the latter's automobile. And he said that on the morning of the day of the homicide, his wife told him she had submitted to an abortion after Rosenberg had aided her in securing the services of a physician and in financing the operation. Briggs also told the jury that he had planned to commit suicide and wished to see his estranged wife before doing so.

Concerning his conversation with the officers, he denied some of the statements which they said he made to them. He explained that, when they questioned him, he had wanted to die as he had nothing to live for. "I said everything at the time I could that was damaging to me, whether it was so or not."

Although the appellant told the jury that he did not intend to kill Rosenberg at any time, testimony offered by the prosecution shows that he had made threats to do so. Twelve days before the shooting, Briggs, considerably intoxicated, went to the plant and inquired for Rosenberg. A witness testified that the appellant told her at that time he was going to kill Rosenberg; that he hated him "for firing him from his job." She said he carried a pocket knife with which he had cut his hand severely, and that he was profane in his remarks concerning Rosenberg. She said she talked with Briggs for about five minutes, urging him to leave the plant,

but that he finally insisted on entering the work rooms and was subsequently arrested.

The appellant bases his charge of prejudicial error upon several grounds. The first of these concerns the district attorney's argument to the jury. During these remarks, the prosecutor commented upon the fact that the appellant's testimony is uncorroborated and he did not call his wife as a witness. Another statement of the district attorney of which he complains is that the People could not present her testimony. Also, the appellant contends, the trial judge erroneously stated the law relating to the testimony of a wife. Concerning his own testimony, the appellant asserts that the court, upon redirect examination, refused to allow him to state the whole of several conversations with the arresting officers. Finally, he says, the court improperly restricted the argument to the jury made in his behalf and the evidence of premeditation is insufficient to support a verdict of murder in the first degree.

The record shows that in his argument of the case, the district attorney declared that the appellant's testimony concerning the assistance given his wife in procuring an abortion is entirely without corroboration. He also told the jury that, aside from the appellant's testimony, there is no evidence to prove either the pregnancy of Mrs. Briggs or an abortion upon her. In other comment upon the appellant's testimony, the prosecutor said: "He has related to you conversations which he said he had with Mr. Ross and with Mrs. Briggs. There is no corroboration of that testimony. I certainly couldn't call Mr. Ross as a witness to testify that those conversations were not had; because this defendant has by his act prevented that. Neither could I call his wife."

The appellant made no objection to these remarks, nor did he request the trial judge to admonish the jury concerning them. Ordinarily, without timely objection, an objection of misconduct will not be considered by an appellate court. And the most that may be said in reasonable criticism of the prosecutor's statement is that it is incomplete. Obviously, he meant that he could not compel the appellant's wife to testify against her husband. (Sec. 1322, Pen. Code.) Considering all of the evidence shown in the record, there is no doubt of the appellant's guilt nor any basis for concluding that the

remarks complained of contributed materially to the verdict. Certainly it does not amount to prejudicial error.

The ruling of the trial judge comes within the same category. During the argument of appellant's counsel, he told the jury: ". . . The prosecution would like to have you speculate as to the wife; they say they could not call the wife. The District Attorney, with the Judge, know that calling the wife is a question of privilege; the defendant could exercise the privilege if she were called by the prosecution, but I don't think we would have exercised the privilege." At this point, the trial judge said: "There is a rule of law which provides that the wife cannot testify against the husband without his consent. But it also has been held misconduct for the District Attorney to call the wife to the witness stand and force the defendant into a situation where he has to either accept the testimony of the wife or make objections."

Perhaps the case referred to was *People* v. *Terramorse,* 30 Cal. App. 267 [157 Pac. 1134], where the court declared that a defendant's declination to permit his wife to be a witness on behalf of the prosecution must not be used against him. More recently, it has been said that it is unfair for a district attorney to ask a defendant, in the presence of the jury, whether she would object to having her husband called as a witness for the prosecution. Under such circumstances, the court ruled, the spouse should be offered as a witness, subject to the objections of the defendant. (*People* v. *Moore,* 111 Cal. App. 632 [295 Pac. 1039].) Although the comment of the trial judge was not entirely accurate, it is obvious that he was stating to the jury the limitation upon the right of the district attorney to present the testimony of the wife. Considering all of the circumstances under which the remark was made, it did not prejudice the appellant's rights.

The appellant contends that the trial court erred when it limited his redirect examination. His claim is that he should have been allowed to explain the inconsistent statements said to have been made by him in his conversations with the officers. In ruling upon his testimony, the court did not permit him to explain the statements he directly or equivocally denied having made, but it permitted him to explain the others. These rulings were correct.

The final contention relied upon by the appellant is

that the evidence of premeditation is insufficient to support a verdict of first degree murder. In reviewing his testimony, he points out that in order to see his wife before committing suicide it was necessary for him to obtain the permission of Rosenberg, who was the night foreman, and that he did in fact ask one of the employees at the plant to see his wife. He maintains that his acts were those of a man so overcome by his broken marriage and his consequent disappointments that upon seeing the man who, he believed, had caused his difficulties, he shot without premeditation or plan. But the record also includes his statement to the police officers that after making up his mind to shoot Rosenberg, he had to wait ten days to get money to buy the rifle.

The jury heard all of this testimony and also the appellant's statements in positive denial of some of the answers which the officers said he gave in response to their questions. Several witnesses related not only the circumstances of the shooting but also other facts tending to show premeditation. By its verdict the jury impliedly found that the appellant acted with the malice which is an element of the crime of murder in the first degree, and the evidence is amply sufficient to support that verdict and to justify the sentence which has been imposed.

The judgment and the order denying a new trial are, and each of them is, affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Houser, J., Carter, J., and Traynor, J., concurred.