[Crim. No. 4802.   In Bank.   Sept. 28, 1948.]

THE PEOPLE, Respondent, v. DAVID KLOR, Appellant.

Morris Lavine for Appellant.

Fred N. Howser, Attorney General, and Henry A. Dietz, Deputy Attorney General, for Respondent.

SHENK, J.—The defendant was charged with the crime of assault with a deadly weapon with intent to commit murder. He pleaded not guilty and after trial by jury was convicted of assault with a deadly weapon. He appeals from the judgment and from an order denying his motion for a new trial.

As grounds of appeal it is urged that the evidence is not sufficient to support the verdict; that the trial court erred in failing to instruct the jury on a specific point; and that the district attorney was guilty of prejudicial misconduct in referring to the fact that defendant's wife did not testify at the trial.

The evidence relating to the first ground was as follows: The defendant was the proprietor of a jewelry store on West Fifth Street in Los Angeles located a short distance around the corner from a branch shoe shop. In the forenoon of June 12, 1946, a young lady employee of the shoe shop entered the jewelry store and began to look at watches. Shortly thereafter Kenneth Temple, the manager of the shoe shop, also came to the jewelry store and after a few words with the young lady left the store with her. At this time defendant's wife and a salesman named Goldman were in the store. One Sogg was trimming the window and defendant was outside sweeping the sidewalk. Goldman testified that immediately after the young lady and her companion left the premises defendant came into the store and asked him what had happened. He told the defendant that the young lady was on the point of buying a watch from him when he looked up and saw Temple and heard him say to her, "Is that the watch you are buying?"; that Temple began to examine the watch the young lady was interested in, compared it with his own, and "more or less threw it back" toward Goldman;

and that he then said to the young lady, "Come with me," and taking her by the arm walked out of the store with her. Goldman also testified that he told Temple the young lady had been a satisfied customer and that she had previously bought a watch or clock. He also stated that when the defendant finished his questioning he obtained from his wife the telephone number of the shoe company and held a brief conversation with someone at the main store. A few minutes later he secured from his wife the telephone number of the branch shoe shop near by and asking for the manager held a short conversation with Temple. Goldman stated that after these conversations the defendant became very excited and secured a revolver from one of the showcases; that both he and the defendant's wife told the defendant not to get excited but that the defendant began waving the revolver around and aimed it at the door. A short time later Temple appeared in the doorway and the defendant waved the gun around again and pointed it at the door. Temple then turned and ran out, proceeding down the street in the direction of the shoe shop. The defendant ran after him, firing four or five shots as he ran. He was finally disarmed by a traffic officer who stated that the defendant told him that Temple had stolen a watch from him. One of the bullets fired by the defendant passed through Temple's lung and the others pierced his arms.

The defendant had not known Temple prior to these occurrences. He testified that he was working on watches behind the counter when he saw Temple approach and "swing at him"; that he then heard Temple say, "I will take this watch for nothing"; and observed him running toward the door. According to the defendant's testimony Temple also said, "What are you going to do about it?" whereupon he secured the gun and ran from the store in pursuit of Temple. He stated that as he ran he shouted "Stop Thief," and fired a shot into the air to frighten Temple; that Temple continued to run, holding the watch in his hand and that he (defendant) continued to shoot at him. It should here be noted that at the preliminary hearing the employee Goldman confirmed the defendant's statement that he heard someone say, "I will take this watch for nothing," and stated that thereafter he saw defendant secure the gun and follow Temple out of the store. At the trial Goldman admitted that he had so testified at the preliminary hearing but declared that the circumstances leading up to the shooting had been as he testified at the trial (as previously referred to herein). Temple's testimony con-

firmed that given by Goldman at the trial. Sogg testified that he saw Temple running down the street with the defendant in pursuit and that he heard the latter say, "Stop that man. That man is a thief and a robber." Although the defendant stated that Temple had entered the store and stolen a watch immediately before he armed himself with the gun he admitted having had the conversation with Goldman as to "what had happened" when the young lady and Temple were in the store a few minutes earlier. He also admitted having held the telephone conversation with the main shoe store and with Temple. He stated that when he talked to Temple on the telephone he told him it was unfair and unethical to drag customers out of his store; and that Temple started to use vile names against him whereupon he hung up. Despite the defendant's testimony that Temple had stolen the watch that the young lady had looked at and had it in his hand as he was running down the street the evidence otherwise was that the watch had not been taken from the store but remained there at all times. Later on the day of the shooting the watch was turned over to a police officer who called at the jewelry store.

In view of the conflict in the evidence it was, of course, for the jury to say whether the defendant fired the shots in the belief that he was apprehending a thief as he claimed, or whether, under the version given by the other witnesses, he did so from anger and disappointment that a prospective sale had been frustrated by Temple. In view of the falsity of his statement that Temple had stolen the watch and had it in his hand as he ran down the street the jury could properly find as it did that his asserted defense was baseless and that he shot Temple because of his interference with the anticipated sale of the watch. It follows that the claim of insufficiency of the evidence is without merit.

As to the second point, the defendant contends that at most he acted under a mistake of fact in shooting Temple, i. e., that he mistakenly believed Temple had taken the watch; hence that he was entitled to have the jury instructed that an act performed under a mistake of fact which if true would not have amounted to a crime, is not a crime. The defendant's assertion that he acted under a mistake of fact is not only refuted by the testimony of the other witnesses to the effect that Temple did not steal the watch but by the physical facts demonstrating that the watch was not stolen. More-

over the defendant did not request an instruction on the point under discussion. ▮ It is true that in a criminal case a jury should be given instructions on the general principles of law applicable to the case and even if not requested by the parties such instruction should be given by the court of its own motion. But this is not the rule as to specific points developed at the trial. Unless instructions thereon are requested by the parties desiring them it is not incumbent on the court to give them of its own motion where the jury is otherwise fully and fairly instructed on the general principles of law involved in the case. (*People* v. *Bender,* 27 Cal.2d 164, 175 [163 P.2d 8] ; *People* v. *Warren,* 16 Cal.2d 103, 116-117 [104 P.2d 1024].)

▮ As to the claim of misconduct on the part of the prosecuting attorney it appears that in putting on the prosecution's case the deputy district attorney called out the name of defendant's wife as a witness. Some colloquy followed between counsel and the court as to whether the wife had been subpoenaed as a witness. Defense counsel stated she had not, and asked whether section 1881 of the Code of Civil Procedure had been abolished. The deputy district attorney then remarked that the privilege of a defendant to refuse to allow his wife to testify against him must be claimed. Nothing further was then said on the subject and the examination of witnesses proceeded. During the course of the argument to the jury the deputy district attorney named the persons present when the events took place in the jewelry store and included the name of the defendant's wife. He then said, ". . . everything that the defendant told us in regard to his belief that Mr. Temple was a thief and a robber transpired in the presence of his wife." Later on he also stated, "The wife did not testify, so we only have Mr. Goldman's testimony and the defendant's testimony. . . ." Again he stated, ". . . I think it is fair to say that we are entitled to know why the only other witness who is in this state did not come to tell us what . . ." Defense counsel interrupted : "I assign that as misconduct. The process of this court is available to the prosecution. If there is any witness that they claim there was a burden on us to produce, it is a misstatement of the law and contrary to law. We are not called upon to produce any witness." The record then shows: "[The Court] : I know that, and neither is the State, and the Court will so instruct the jury later. Now, ladies and gentlemen of the jury, remember—again let me admonish you what counsel says with

respect to this case is simply their own viewpoint. And let us stay to the record, just comment on what the record in this case shows. That is for both sides. Just stay right within the record. [Deputy district attorney]: Now, that person did not testify. Now, as his Honor has just said, all I have done is tell you how I view the evidence . . . and pointed out what. I consider is very essential, and that is that Mrs. Klor did not choose to testify. [Defense counsel]: I assign that statement as misconduct and ask you to instruct the jury, your Honor, that that remark was grossly improper. The Court: Well, the Court has instructed the jury, and I want both counsel on both sides to confine themselves to the record in this case . . . I want no further comment on that matter.''

It is the law that neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties, except with the consent of both (Pen. Code, § 1322).

In the case of *People* v. *Terramorse,* 30 Cal.App. 267 [157 P. 1134], it was held that a defendant's refusal to permit his wife to be a witness for the prosecution must not be used against him. Later, in *People* v. *Moore,* 111 Cal.App. 632 [295 P. 1039], it was said that although it was unfair for the prosecution to ask a defendant in the presence of the jury whether she would object to having her husband called as a witness for the prosecution, yet there was nothing in the statute which required that such an inquiry prior to calling the witness should be secret or outside the presence of the jury. Recent authority is to the effect that if the prosecution desires to use the husband or wife of the defendant as a witness the proper procedure is to offer the spouse as a witness, subject to the claim of privilege by the defendant. (*People* v. *Briggs,* 20 Cal.2d 42, 47 [123 P.2d 433].) To the same effect are: *People* v. *Singh,* 182 Cal. 457 [188 P. 987] ; *People* v. *Moore, supra,* 111 Cal.App. 632; and Fricke, Cal.Crim.Evid., p. 383. As urged by the defendant, it is true that when the remarks here objected to were made the prosecution was aware that it had not issued a subpoena for the defendant's wife to appear. In these circumstances, the calling out of her name during the course of the prosecution's case, with no evident intention of making her a prosecution witness, coupled with the later references in the argument to the jury as to her failure to testify, was improper and unwarranted. However, the trial court gave the following instruction offered by the prosecution, that

". . . neither the prosecution nor the defense is required to call as its own witnesses all persons who are shown to be present, or who may appear to have some knowledge of the matters here on trial." In view of this admonition to the jury and the evidence indicating that the crime of which defendant was convicted was clearly established, it may not rightly be held that the claimed misconduct was so improper as to require a reversal.

The judgment and order appealed from are therefore affirmed.

Gibson, C. J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

In my opinion the remarks of the deputy district attorney with respect to the failure of defendant to call his wife as a witness constituted misconduct so reprehensible and so designedly planned that prejudice to defendant inevitably followed.

It is conceded by the majority opinion, as the authorities hold, that the prosecution cannot comment upon or make a point of the failure of a defendant in a criminal case to call his wife as a witness. The matter is discussed in *People* v. *Terramorse,* 30 Cal.App. 267, 273 [157 P. 1134], where the court said: "In declining to consent that she [defendant's wife] should be a witness against him the defendant was standing as strictly upon his legal rights as he would have been had he declined to be a witness himself, and he was equally entitled to the application of the rule that his declination to permit his wife to be a witness should not in any manner prejudice him or be used against him on the trial. (*People* v. *Heacock,* 10 Cal.App. [450], 456 [102 P. 543].) In making the foregoing comment the prosecuting officer was guilty of prejudicial misconduct which counsel for the defendant immediately called to the attention of the court, and requested that the jury be instructed to disregard it. The court did not give such an instruction as the defendant asked and was entitled to have given."

In the instant case the prosecuting attorney commenced, what to all appearances was a preconceived plan, to discredit and prejudice the defendant for failing to call his wife as a witness. At the start of the trial the prosecution made inquiry to ascertain whether several witnesses were present, not men-

tioning defendant's wife. After several witnesses had been called and examined the court directed the prosecuting attorney to call the next witness. Whereupon the prosecuting attorney called for defendant's wife, although he knew that she had not been subpoenaed and he must have known she was not present. He thus left the impression with the jury that defendant was keeping his wife from court for the purpose of suppressing evidence. To consummate this obvious plan the prosecution argued to the jury that there were only five persons who knew what transpired at the scene of the alleged offense, and among them was defendant's wife; that all the defendant testified to occurred in his wife's presence; that "*The wife did not testify,* so we only have Mr. Goldman's testimony and the defendant's testimony"; that "defendant immediately goes to the back of the store *where his wife is* and there is some confusion, and who does he tell us?"; that "I think it is fair to say that we are entitled to know why the only other witness [referring to defendant's wife] who is in this State did not come to tell us what—— [Interruption in which defendant's counsel claimed misconduct and the court admonished the jury; but the prosecution continued to insist] . . . Now, that *person did not testify.* Now, as his Honor has just said, all I have done is tell you how I view the evidence. I haven't tried to tell you what the evidence is, but I have given you my honest interpretation of the facts and *pointed out what I consider is very essential, and that is that Mrs. Klor did not choose to testify.*" Then followed a similar interruption, but the prosecuting attorney persisted, going on to state from where he had been interrupted: "*And* from all of the facts that we have in this case, the *only* facts that *corroborate* any one of the two witnesses who *did* testify, the only independent facts that *corroborate* either one of those two witnesses are the facts pertaining to the phone conversation, which *corroborates* Mr. Goldman's version of what happened, and not the defendant's."

This apparently deliberate and persistent misconduct cannot be condoned. It clearly implied that if defendant's wife had testified her testimony would have been very damaging to defendant. It is impossible to say that defendant was not prejudiced.

Reference is made in the majority opinion to admonitions given to the jury when misconduct was charged by the defense, but they were wholly insufficient to cure the error.

They merely told the jury that they were the judges of the evidence and not to take counsel's statements as evidence. That did not at all meet the error in implying that the failure to call the wife could be held against the defendant. That had nothing to do with evidence. It had to do with the failure to call a witness. The instruction to the jury at the close of the evidence was equally ineffective. It was general, not specific, and was given after the impression had become fixed in the jurors' minds.

In my opinion it is too obvious for any one to attempt to deny, that the misconduct of the prosecuting attorney in this case was wilful and deliberate, and was designed to and did prejudice the defendant to such an extent that it could not be cured by any admonition the court might have given, and the defendant is therefore entitled to a new trial.

For the foregoing reasons, I would reverse the judgment.

Schauer, J., concurred.

Appellant's petition for a rehearing was denied October 25, 1948. Carter, J., and Schauer, J., voted for a rehearing.