[Crim. No. 2551.   First Dist., Div. One.   Dec. 7, 1948.]

THE  PEOPLE,  Respondent,  v.  EDWARD  HARMON,
Appellant.

Leslie C. Gillen and Francis C. Perry for Appellant.

Fred N. Howser, Attorney General, David K. Lener, Deputy Attorney General, and A. E. Bagshaw, District Attorney, for Respondent.

WARD, J.—Defendant was convicted of a felony—illegal possession of narcotics. The body of the information alleges that he wilfully, unlawfully and feloniously had in his possession a narcotic, to wit, heroin.

Health and Safety Code, section 11500, provides that no person shall possess a narcotic "except upon the written prescription of a physician, dentist, chiropodist, or veterinarian licensed to practice in this state." Defendant contends that the exception must be negatived in the pleading. It has been held that the allegation that defendant unlawfully and feloniously possessed heroin is a sufficient negation of the exception. (Pen. Code, § 952; *People* v. *Gelardi,* 77 Cal.App. 2d 467 [175 P.2d 855]; *People* v. *Gin Shue,* 58 Cal.App.2d 625 [137 P.2d 742]; *People* v. *Bill,* 140 Cal.App. 389 [35 P.2d 645]; see, also, *People* v. *Pierce,* 14 Cal.2d 639 [96 P.2d 784] and *People* v. *Codina,* 30 Cal.2d 356 [181 P.2d 881].)

The case for the People consisted of testimony from inspectors of the state narcotic enforcement division, a federal narcotic agent and a chemist. The supervising inspector testified that on the day of the alleged commission of the offense, he, in the company of another inspector and the federal agent went to a room in a motel; he opened the door with a passkey, but found a burglar chain. He saw the defendant run past the door from the direction of the bedroom. He put his weight against the door, and the jamb outside the door came loose along with the chain. As he entered he observed defendant standing in front of the toilet

bowl in the bathroom. The inspector testified that he pulled the defendant away from the bowl but that defendant threw his weight forward and flushed the bowl. The defendant was taken into the bedroom, where the inspector left him with the federal agent, and the inspector returned to the bathroom where he saw floating in the toilet bowl a piece of paper approximately 1½ inches long and possibly three-quarters of an inch wide swirling in the water—"I had the piece of paper in my hand but the water going out of the bowl took it from my fingers." There was found on top of the flush box a white paper package containing a substance. The agent's testimony as to what happened at the motel is similar to that of the inspector. He testified that after the inspector found a white paper package on top of the flush box, he found a similar package, which he identified. The latter two exhibits were received in evidence. A chemist testified that he analyzed the substance and found it to be 56 grains of adulterated heroin, a derivative of morphine.

According to the inspector's testimony after the above described exhibits had been found defendant said "that he wanted to talk to us about . . . other people who were bigger than he was in the narcotic traffic and . . . save himself from going to jail"; that his wife did not use narcotics, "that he was the only one using them and that she knew nothing whatsoever of anything in the cabin." During this time he was dressed in a robe and his wife was in bed. They were told to dress and were then taken to the district attorney's office and booked at the county jail in San Rafael. Defendant immediately was released on bail.

The following day the two state inspectors and the federal agent met defendant at the Round House, a restaurant, at the south end of the Golden Gate Bridge. The chief inspector testified as to their conversation: "I said, 'What do you want, Eddie?' He said, 'I want to help myself out.' I said, 'Well, before we go into that, let's hear about the bindle I took from the toilet in the cabin.' I said, 'What's the story on that, and let's get that straight, and then we'll go on from there?' He stated that the bindle that had got flushed down the toilet, that I had reached for, was a bindle of pure uncut heroin, and the bindle that I had recovered from the top of the flush box was one that he was using for his own use, which—and I asked him, 'What was the pencil marking on it?' and he said, 'That is how I could tell which one was the one that I had been cutting for my own use.'" The federal agent similarly

testified that defendant proposed "to help himself" by assisting in apprehending larger dealers in narcotics.

The defendant testified that when the officers entered his apartment he was struck over the head causing a "gash here about three inches above my right eye." He was photographed on the same day, shortly after the arrest. No evidence appeared in the photograph of the gash. Defendant stated that his hair covered the gash. The officers denied that defendant had been struck, but stated that at the time of his arrest there was an old scar over the right eye. Other accusations were made against the officers, which the jury evidently disbelieved. The direct evidence that two "bindles" containing heroin were found in the presence of the defendant in a motel room or apartment was sufficient to establish the charge that the defendant had "in his possession a narcotic, to-wit, heroin."

The contention that the evidence was obtained in violation of the Fourth Amendment of the Constitution of the United States is not well founded. The California rule is that the illegality of search and seizure does not affect the admissibility of the evidence—there is no denial of due process of law because the previous illegal acts do not affect the fairness and impartiality of the trial itself, and the defendant may have civil and criminal remedies against the officers for said illegal acts. (*People* v. *Mayen,* 188 Cal. 237 [205 P. 435, 24 A.L.R. 1383]; *People* v. *Gonzales,* 20 Cal.2d 165 [124 P.2d 44]; *People* v. *One 1941 Mercury Sedan,* 74 Cal.App.2d 199, 202 [168 P.2d 443].) Defendant admits that the rule stated in *People* v. *Gonzales, supra,* is the controlling rule in this state, but raises the question in the hope that prior decisions will be disapproved. It must be held that the evidence was factually and legally sufficient to uphold the verdict.

It is claimed that the trial court erred in giving or refusing certain instructions. The first attack is that the burden of proof is upon the defendant that he possessed a written prescription and that in the absence of such evidence it must be assumed that he had no such prescription. The rule previously mentioned, covering the allegations of the complaint that an accused unlawfully possessed a narcotic also applies to the burden of proof. Whether one has such a prescription is a fact peculiarly within the knowledge of the accused. (*People* v. *Bill, supra; People* v. *Boo Doo Hong,* 122 Cal. 606 [55 P. 402].) Upon the failure of the defendant

to prove a written prescription, it must be assumed that there was no such prescription.

It is claimed that the trial court gave a confusing instruction on the distinction between direct and indirect evidence. The confusion arises because it is assumed that the court instructed that ''Direct [evidence] is of two kinds, namely presumptions and inferences.'' However, an affidavit of a phonographic reporter who acted in such capacity during the trial avers ''that his attention has been directed to lines 10 and 11 on page 248 of said official transcript of the testimony filed herein which reads 'Direct is of two kinds, namely presumptions and inferences.', and that upon the examination of his shorthand notes he finds the word 'Direct' in said quotation is a typographical error; that his shorthand notes disclose the word used by the trial judge in said instruction is the word 'Indirect' and that said word was used by said trial court in giving its instructions to the jury.''

In ''Appendix A'' of appellant's opening brief, are set forth certain requested instructions which were refused. No argument or authority is given in support of his blanket assertion that error was committed thereby. In appellant's closing brief appears argument to sustain the claim of error. This method of presentation of points on appeal is condemned. However, upon examination it appears that all of the proposed instructions given or refused referred to in ''Appendix A'' were covered by the instructions given or were not involved in the case. The jury was instructed on the presumption of innocence and reasonable doubt and as to the two classes of evidence, direct and circumstantial.

An instruction that is specifically mentioned in appellant's opening brief, which he claims should have been given, reads: ''In order to sustain a conviction on circumstantial evidence, all the circumstances proved must not only be consistent with each, but they must be consistent with the hypothesis that the accused is guilty, and at the same time inconsistent with the hypothesis that he is innocent, and with every other rational hypothesis except that of guilt.

''If the circumstantial evidence relied upon in a case is such that it may reasonably lead to two opposite conclusions, one pointing to the guilt of the defendant, and the other to his innocence, then it is not sufficient to convict upon, for in such an event, the jury must adopt the hypothesis of innocence, and find the defendant not guilty.'' In *People* v. *Bender*, 27 Cal.2d 164 [163 P.2d 8], it was held that it is the

duty of the court on its own motion to instruct the jury on all matters necessary for their information. In the Bender case, the evidence offered by the People was "entirely" circumstantial. Hence, circumstantial evidence instructions would have been appropriate. Here, circumstantial evidence was introduced by the People in corroboration of direct evidence, but the evidence against the defendant was sufficient without the circumstantial evidence. In the present case the defendant requested the proposed instruction *as quoted,* but it was not necessary unless it was vital to a determination of the sufficiency of the evidence. (*People* v. *Putnam,* 20 Cal.2d 885 [129 P.2d 367]; *People* v. *Bender, supra.*) In *People* v. *Lapara,* 181 Cal. 66, 70 [183 P. 545], the court stated: "It is not now open to question that in a criminal case in which the prosecution relies for conviction upon direct evidence, the circumstantial evidence, if any, being merely incidental to and corroborative of the direct evidence, an instruction on the law of circumstantial evidence need not be given, and that, in such case, it should not be intimated to the jury that the case of the people is one of circumstantial evidence. [Citing cases.] The reason for the general rule in this behalf is to be found in the danger of misleading and confusing the jury where the inculpatory evidence consists wholly or largely of direct evidence of the crime. In such cases, as courts have repeatedly pointed out, it would be most mischievous to intimate to the jury that the prosecution was relying for a conviction upon circumstantial evidence." In *People* v. *Simeone,* 26 Cal.2d 795 [161 P.2d 369], it was held that where the prosecution's case was based "primarily" upon direct testimony "and the circumstantial evidence was merely incidental and corroborative of the direct evidence," (p. 807) the refusal to give an instruction often given in circumstantial evidence cases was not prejudicial. The following statement is found in *People* v. *Jerman,* 29 Cal.2d 189, 197 [173 P.2d 805]: "Moreover, a court is not required to instruct upon the rules of law applicable to circumstantial evidence which is incidental to and corroborative of direct evidence. (*People* v. *Lapara,* 181 Cal. 66, 70 [183 P. 545]; *People* v. *Lonnen,* 139 Cal. 634, 637 [73 P. 586]; *People* v. *Burns,* 121 Cal. 529, 532 [53 P. 1096]; *People* v. *Corlett,* 67 Cal.App.2d 33, 48 [153 P.2d 595, 964].) The reason for this rule is found in the danger of misleading and confusing the jury where the inculpatory evidence consists wholly or largely of direct evidence of the crime. (*People* v. *Lapara, supra,* p. 70.) And an

instruction that the circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion is properly refused where, as here, the case does not admit of two theories, the defendant by his own testimony having admitted his commission of the crime. (*People* v. *Raber*, 168 Cal. 316 [143 P. 317].)'' In the present case the accused admitted the possession of narcotics.

■ The defendant states that the district attorney was guilty of misconduct throughout the entire trial, but that counsel who tried the case—not counsel on appeal—failed to make assignments of misconduct. ''. . . it has long been the rule in this court that a claim of misconduct on the part of the district attorney . . . will not ordinarily be considered on appeal, unless the complaining party has promptly called the attention of the court to the alleged impropriety and assigned misconduct thereon.'' (*People* v. *Albright*, 87 Cal. App.2d 222, 225 [196 P.2d 800], quoting *People* v. *McDonald*, 167 Cal. 545, 551 [140 P. 256] ; see, also, *People* v. *Briggs*, 20 Cal.2d 42 [123 P.2d 433].)

■ Defendant urges that in one instance the misconduct was such that no admonition would have been of any avail. Referring to the defendant's wife, the district attorney commented on her failure to testify although she was present and would have known whether her husband was beaten and whether the bindle of narcotics was found or not: ''The law does not permit me to produce her. The law permits the defendant to produce her. If he cannot produce her, he has the right to offer some explanation of why she was not here to the jury, and the fact that they did not produce her permits you to draw an inference from that fact. . . . It is an inference against the defendant.''

The answer to the claimed misconduct in the present case appears in *People* v. *Klor*, 32 Cal.2d 658, 662 [197 P.2d 705] : ''As to the claim of misconduct on the part of the prosecuting attorney it appears that in putting on the prosecution's case the deputy district attorney called out the name of defendant's wife as a witness. Some colloquy followed between counsel and the court as to whether the wife had been subpoened as a witness. Defense counsel stated she had not, and asked whether section 1881 of the Code of Civil Procedure had been abolished. The deputy district attorney then remarked that the privilege of a defendant to refuse to allow his wife to testify against him must be claimed.'' During the course of

the argument to the jury in the Klor case, the deputy district attorney referred to the same matter which brought forth an assignment of misconduct by defense counsel. Whereupon the court adminished the jury that counsel's statement was only an expression of opinion. This was followed by further comment by the district attorney which brought forth objections from the defense.

In *People* v. *Klor, supra,* pages 663, 664, the court stated: ''It is the law that neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties, except with the consent of both (Pen. Code, § 1322).

''In the case of *People* v. *Terramorse,* 30 Cal.App. 267 [157 P. 1134], it was held that a defendant's refusal to permit his wife to be a witness for the prosecution must not be used against him. Later, in *People* v. *Moore,* 111 Cal.App. 632 [295 P. 1039], it was said that although it was unfair for the prosecution to ask a defendant in the presence of the jury whether she would object to having her husband called as a witness for the prosecution, yet there was nothing in the statute which required that such an inquiry prior to calling the witness should be secret or outside the presence of the jury. Recent authority is to the effect that if the prosecution desires to use the husband or wife of the defendant as a witness the proper procedure is to offer the spouse as a witness, subject to the claim of privilege by the defendant. (*People* v. *Briggs,* 20 Cal.2d 42, 47 [123 P.2d 433].) To the same effect are: *People* v. *Singh,* 182 Cal. 457 [188 P. 987]; *People* v. *Moore, supra,* 111 Cal.App. 632; and Fricke, Cal. Crim. Evid., p. 383. As urged by the defendant, it is true that when the remarks here objected to were made the prosecution was aware that it had not issued a subpoena for the defendant's wife to appear. In these circumstances, the calling out of her name during the course of the prosecution's case, with no evident intention of making her a prosecution witness, coupled with the later references in the argument to the jury as to her failure to testify, was improper and unwarranted. However, the trial court gave the following instruction offered by the prosecution, that '. . . neither the prosecution nor the defense is required to call as its own witnesses all persons who are shown to be present, or who may appear to have some knowledge of the matters here on trial.' '' In the present case no objection was made and hence no special

instruction was necessary. The objection is presented for the first time on appeal.

The jury herein disbelieved the defendant's version of the arrest. After an entire comparison and consideration of all the evidence the verdict demonstrates that the jury held ''an abiding conviction, to a moral certainty, of the truth of the charge.'' (Pen. Code, § 1096.)

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.