[Crim. No. 2280. Third Dist. Sept. 11, 1951.]

THE PEOPLE, Respondent, v. WILBUR ARMSTRONG, Appellant.

Alden Ames for Appellant.

Edmund G. Brown, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

VAN DYKE, J.—Wilbur Armstrong, the appellant here, was indicted for manslaughter in that on July 3, 1950, he did wilfully, unlawfully and without malice kill one Otis

Robinson by shooting him with a gun. A jury returned a verdict of guilty as charged. Motion for a new trial was denied.

Appellant was the owner of a small farm in Tuolumne County where he lived with his wife Lillian and her three small children by her former marriage to the decedent Robinson. The children were 6, 5 and 2 years of age. The two men had known each other from 1944, at which time both had been patients at Oak Knoll Hospital. In July, 1949, Lillian divorced Robinson. She married appellant about a month later. She was given custody of the children and Robinson was given the right to see and have the children with him at reasonable times and places. Just before the homicide Robinson had taken his son Roy, aged 5, on a trip to Texas. There had been ill feeling between the two men for some years and Robinson had made serious threats against appellant, some of which had been made directly and some of which had been made to others and communicated to appellant. Appellant had informed Robinson about 10 months prior to the homicide that he was not to again come upon the appellant's property and arrangements had been made for him to telephone the house when he desired to visit the children, then drive to the gate, which was some distance from the house, at which point the children would be delivered to him. This method of exercising his visitation rights had obtained for some time. Appellant also had threatened to kill Robinson if he would come upon appellant's property and Robinson's threats toward appellant had also assumed the stature of threats to kill. About six months before the homicide and at the request of both appellant and Lillian an attorney had written a letter to Robinson, parts of which were introduced in evidence, wherein he was told that he could not safely assume the right to go upon appellant's property and upon receiving this letter Robinson called upon the justice of the peace, asking for an order permitting him to go onto Armstrong's place, which order was, of course, refused. Appellant had been told by Lillian on several occasions that she was afraid of Robinson and on one occasion when she took the children to the gate Robinson told her that if her husband ever came through the gate he would kill him. She told appellant of this threat. After receipt of the letter from the attorney, however, Robinson did not again pass the gate until the time of the homicide. On that day and at about 3 o'clock in the afternoon he telephoned Lillian that he and the boy had

just returned from Texas, that the boy's eyes were sunburned and that he wanted permission to keep him over the Fourth. Lillian replied it was all right but wanted to know when he would bring the boy out. He said he did not know, but would telephone before coming. Without telephoning again, and between 7:30 and 8 o'clock p. m. he arrived at the home of appellant, entered the gate in company with the boy and came up onto the back porch or onto the steps thereof, at which point he was killed by appellant. Appellant did not deny that he fired the fatal shot. The autopsy surgeon testified that the bullet from appellant's revolver severed the aorta next to the heart and that the wound would cause almost instantaneous death. Appellant's testimony and that of his wife Lillian was that when Roy's sister, looking through the window out onto the porch, announced that her brother was there appellant rose from the dining table at which the family were seated, went through the screen door onto the porch and asked Robinson what he was doing there, saying he knew he was not supposed to come on the property. Robinson replied, "You s-b I'll come up here any time I want to." Lillian did not see the killing, but appellant testified that Robinson, having so spoken, advanced up the steps toward the porch on which appellant was standing, with his revolver drawn, and that Robinson made a movement with his left hand as though to strike appellant, whereupon appellant struck him with the revolver a blow of sufficient force to throw him off balance and cause him to stagger back down the steps; that Robinson again came up, at which time appellant shot. It appears that Lillian was pregnant at the time, was daily expecting the birth of a child, and that the child was born to her on the following morning. There was conflict as to the conversation between appellant and respondent at the very time of the killing. Prosecution witnesses testified that just following the shot Robinson called for help several times and then appellant asked him why he was on the property when he had told him not to be there. Another witness gave the same version, but said that appellant used foul language toward Robinson, saying, "What are you doing up here, you so and so, get the heck out of here" and that these words were spoken after the shot had been fired. Still another witness verified the testimony of the others that it was after the shot when appellant asked Robinson what he was doing there, called him a foul name and told him to get out.

■ Appellant first contends that the evidence is insufficient to support the verdict of guilty. This contention cannot be sustained. It is apparent from the testimony which has been recited that the jury could have drawn the conclusion that appellant needlessly and without justification slew the deceased. In saying this, we do not overlook the strong circumstances favorable to appellant's claim of justifiable homicide. But the jury could have believed that, notwithstanding the testimony of appellant and his wife, the intentions of Robinson were neither actually nor apparently such as to justify the killing. On this point it is enough to refer to the conflict in testimony as to the immediate circumstances of the killing and particularly to the testimony of the prosecution's witnesses which the jury had a right to believe. The jury could have inferred that there was no threat by Robinson as he approached the porch of appellant's home and appellant, but on the contrary that appellant, having armed himself, went upon the porch, carried out his previous threat of killing Robinson if he ever came upon the property, and then simulated the situation testified to by him, by addressing to the dying man the question as to why he was there, coupled with the assertion that he had no right to be there. It is true that when one considers the stress of circumstances obtaining at that moment it is difficult to believe the prosecution's witnesses as to the timing of those remarks, but it cannot be said that their testimony is incredible and if accepted by the jury as true then the entire picture of self-defense, as relied upon by appellant, takes on a vastly different hue and becomes a planned and needless killing, followed by pretense of justification for the benefit of the near neighbors who testified in contradiction of appellant's story. We are not the triers of fact and must assume the truth to be as the jury inferentially found it to be.

■ Appellant next contends that the jury were not properly instructed as to his rights to defend his wife, his unborn child and his home and urges that if the jury had been properly instructed no conviction would have ensued. It appears from the record here that the jury were quite fully instructed. They were advised of the doctrine of reasonable doubt and were told that appellant was to have the benefit of any construction of the evidence which would appear to be reasonable and would support his claim of innocence even though an equally reasonable construction pointed towards his guilt. Manslaughter was defined properly as the unlawful killing

of a human being without malice and the provisions of the code with regard to justifiable homicide were read. The jury were told a killing was justified in resisting any attempt to murder a person or to commit a felony or to do great bodily injury to any person or when done in defense of habitation, property or person against one manifestly intending or endeavorng by violence to commit a felony or against one who manifestly intended and endeavored in a violent manner to enter the habitation of another for the purpose of offering violence to anyone therein. · The jury were further told that a killing was justifiable in lawful defense of the killer, his spouse, parent, child, master, mistress or servant when there was reasonable ground to fear a design to commit a felony or to do great bodily injury and imminent danger of the design being carried out. This last definition of ''justifiable homicide'' was given subject to the exception that if the killer was the assailant or the combat was mutual then he must endeavor in good faith to decline further struggle before killing. With respect to the claim of self-defense, which was made by the appellant, the jury were instructed fully as to the necessary elements that must be found before that defense would be available. But appellant especially complains that the court overemphasized the matter of the permissible defense by appellant of his own safety without giving sufficient prominence to the appellant's right to defend and protect his home, his wife and unborn child. In making this contention, appellant recognizes that the right to defend a wife or child was explained to the jury, but insists that too little was said on the subject so that the jury must have gone to their deliberation believing that justification for the killing rested solely upon appellant's claim that he killed only in defense of his own person. We do not think the record will support the criticism. It is true that more emphasis in the sense of quantum of instruction is laid upon the latter right, but we think it entirely unlikely that the jury could, under the instructions of the court, have lost sight of the accompanying right of defense of habitation, spouse and child; and from the very brevity of the testimony as to the few seconds elapsing between appellant's act in going armed upon the porch of his home and the slaying of Robinson the jury could have inferred that there was no good reason to hold that appellant acted to protect his wife and child, and on the contrary that the real issue was as to whether or not he acted in defense of his own person. With regard to the latter issue, the jury was

given the so-called doctrine of the reasonable man who not only believes, but for good reason believes he is in danger of receiving great bodily harm and that the circumstances necessitate killing to avoid such injury. They were told that the circumstances must be such as to excite the fears of such reasonable man and that the killer must act under the influence of such fear alone; that the danger must not only be apparent but must be present and imminent or so appear to the slayer and that his belief of necessity must be well founded. Appellant does not challenge the correctness of these instructions and we think that the trial court was not only justified in giving them, but that in the full performance of its duty it must have done so. ■ Specifically, appellant complains of the court's instruction that if the jury found that when appellant fired the fatal shot ''Robinson was making a mere assault with his hands or fists upon the defendant but not with intent to kill or do great bodily harm to the defendant'' and if they further found ''that defendant was not deceived as to the character of said assault'' then he was not justified in taking decedent's life. At first blush this instruction appears to place too great a burden on the perspicacity of one attacked and we think it is not to be recommended. Upon examination, however, it is apparent the jury is only told that if the one attacked knows there is no intent to do great bodily harm then the killing is not justified and such is the law. (*People* v. *Dawson*, 88 Cal.App.2d 85, 96 [198 P.2d 338]; Pen. Code, § 198.)

■ Appellant complains of certain instructions as to the effect upon the right of self-defense of the one claiming its protection having been guilty of the initial attack. His complaint is not that the instructions given were not correct, but that they were inapplicable to the facts and constituted instructing upon issues which found no support in the evidence. Such instructions have been held to be erroneous in such cases as *People* v. *Eggers*, 30 Cal.2d 676, 687 [185 P.2d 1], wherein the court declared: ''To charge the jurors as to an issue not predicated upon some theory logically deducible from the evidence presents for consideration a question not properly determinable by them.'' (See, also, *People* v. *Roe*, 189 Cal. 548, 558 [209 P. 560].) But the evidence as hereinbefore recited would have justified an inference by the jury that there was nothing in the nature of an attack on the part of Robinson and that appellant's striking him with his gun was the first attack made; that as a result of this blow decedent

was at least temporarily forced back down the steps up which he was going when the blow was struck, and that there thus arose a situation, making applicable the rule contained in the instructions complained of that, ''The right of self-defense is not available to a person who has sought a quarrel with the design to force a deadly issue and thus through his fraud, contrivance or fault, to create a real or apparent necessity for making a felonious assault, for in such a case the original intent would control.'' Similar circumstances justified the court in further telling the jury that ''When one makes a felonious assault upon another, or has created appearances justifying that other in making a deadly counterattack in self-defense, the original assailant may not slay his adversary and then avail himself of the plea of self-defense unless, before such slaying, he first and in good faith declines further combat.'' We say this notwithstanding the significant fact that it appears in the record, without dispute, that Robinson went upon appellant's property knowing that in so doing he was trespassing upon the same after having received ample notice that such act by him had been forbidden.

 Appellant next complains of the court's telling the jury with respect to the claim of self-defense that when the ''peril has passed and when the attacker has withdrawn from the conflict, the person whom he attacked is not justified in pursuing his former assailant or in attacking him.'' Several instructions along this line were given, all of which correctly state the law, it being the contention of appellant, however, that they were not justified by the evidence and that the court committed prejudicial error when it invited the jury to consider whether or not appellant might have been the first of the two men to attack the other. But as we have just pointed out, it cannot be said from this record that the instructions were not appropriate. It is true that the defense presented by appellant, based on justifiable homicide, was factually strong when the evidence is considered favorably to his cause. But we cannot invade the jury's province and say they could not properly have resolved the facts against him.

 Finally on the matter of instructions, appellant complains that the court gave no instruction bearing upon the importance in the case of the uncontroverted fact that the decedent was a trespasser. No such instruction was asked, but appellant invokes the rule that the court should instruct the jury upon every material question upon which there is any

evidence whatever deserving of consideration. (*People* v. *Carmen*, 36 Cal.2d 768 [228 P.2d 281].) This rule, however, is subject to the limitations stated in *People* v. *Klor*, 32 Cal. 2d 658, 662 [197 P.2d 705], and cases therein cited. The rule has no application to specific points developed at the trial as opposed to instructions on general principles of law applicable to the case. We think the exception applies here rather than the rule. The circumstance that Robinson was a trespasser was a specific point in the case for the defense and did not call for special instruction from the court as to its legal effect in the absence of a request therefor by the appellant.

■ Appellant concludes his brief with the contention that the court committed prejudicial error in withholding from the jury parts of the letter written to Robinson by an attorney at the request of appellant and his wife, which letter has been heretofore referred to. Appellant claims that the entire letter should have been admitted and that the People's objections to a part thereof ought to have been overruled. The letter opened with a statement that it was written on behalf of decedent's former wife relative to decedent's threats of taking the children contrary to the decree of the court in the divorce action which awarded him rights of visitation. The writer then stated that Robinson was delinquent in the matter of child support. It is clear that these matters had nothing to do with the issues in this case and were properly omitted. The letter then referred to a statement claimed to have been made by Robinson that he intended to see his children in the marital domicile of his former wife and the writer advised him that he had no legal right to be in his former wife's home. This part of the letter might well have been admitted, since it had to do with the character of the entry upon the property which Robinson made on the evening of the killing. But prejudicial error cannot be ascribed to the exclusion. This is so because the next two paragraphs of the letter, which were admitted, were to the same effect and the admission of the excluded matter could have been no more than cumulative.

The judgment and the order denying a new trial are affirmed.

Peek, J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied September 24, 1951, and appellant's petition for a hearing by the Supreme Court was denied October 11, 1951.