[Crim. No. 1211.    Fourth Dist.    Nov. 27, 1956.]

THE PEOPLE, Respondent, v. HENRY VALLES BORBON, Appellant.

Annette La Rue and Richard Johnson for Appellant.

Edmund G. Brown, Attorney General, and Bonnie Lee Hansen, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant and appellant Henry V. Borbon was charged jointly with his brother Richard C. Borbon with the crime of robbery. A jury verdict of robbery in the first degree against defendants resulted. A motion for new trial was denied. Defendant Henry V. Borbon alone appealed.

The complaining witness operated a small "Hot Spot" drive-in lunch counter in Lindsay. About 10 p. m. on January 26, she was closing the business and had placed the day's receipts of approximately $30, consisting of one ten and about 11 one-dollar bills, plus two handfuls of loose change (no pennies) in a yellow paper bag with her eye glasses and keys. She also placed therein five paid receipts from merchants who had sold goods to the "Hot Spot" that day. About that time appellant entered through the back door, held a shiny-barreled pistol in his hand and told her to "stick them up" and asked "Where is it?" The complaining witness handed him the paper bag and then asked him to return her glasses and keys. He hesitated a while and then refused. He left toward the back yard and just as the door of the car closed he took off across the intersection which was lighted by a red flashing neon sign. The complaining witness observed it and called the police. She described the robbery and the appellant to them, whereupon, an all-points bulletin was broadcast of this description furnished by her. She related the fact that $30 had been taken from her in the robbery; that the man who robbed her was a Mexican about 18 years old, 5 feet 6 or 7 inches tall and thin build, wearing a light long-sleeved shirt and khaki pants; that he had dark curly hair, uncombed and "tousled," and spoke Mexican and English; that his voice was soft, his eyes bloodshot; and while holding a shiny-barreled pistol resembling a cap pistol on her, he was masked up to his eyes with a soiled white cloth or handkerchief; and he swayed from side to side but she could not say he was intoxicated. She described the car as a convertible model 1950 to 1953, "could be a hard top light colored—looked red." She later claimed the reflection of the red neon sign might have given the car a red colored appearance. She also concluded that there may have been another person in the car at the time, since the car started as soon as the door slammed.

Two deputy sheriffs received the call and description shortly after 10 p. m. while on the highway about 8 or 10 miles west, at a cross-road near Farmersville. About that time a 1950 model convertible Buick, light colored, approached on the road leading from Lindsay. The officers followed it for some distance. When it came under some lights, the Buick was stopped. A request was made of the driver, Richard, to see his operator's license. About that time the officer observed appellant seated next to Richard, wearing a light colored long-sleeved shirt and

khaki pants. His hair was dark, curly and uncombed, a Mexican about 17 years of age, and he talked broken English. They told the officers they had just come from Lindsay and the officers informed them that a robbery had just been committed there. The officers became suspicious and asked them to step out toward the rear of their car and in the light and they were searched for a gun but none was found. They did find on appellant $31 in currency and approximately $12.65 in change (no pennies). In Richard's wallet was found a $5.00 bill and loose in his pocket were a ten-dollar and eight one-dollar bills. One officer returned to the Buick and, through the window and on the front seat, partially exposed, he observed the five receipts taken from the "Hot Spot" and subsequently observed that they were dated January 26, the date of the robbery and were made out to the "Hot Spot." A radio call was placed for further information in this respect and it was verified. The receipts were then taken as evidence. Two dimes and a nickel in change were found on the seat of the Buick by the officer. A yellow paper sack was found in the glove compartment. A more thorough search of the car revealed a shiny-barreled loaded semi-automatic gun with a pearl handle hidden up in the springs of the front seat of the Buick. There were some old dirty white rags under the seat. The chief of police arrived on the scene. He observed that appellant answered the description, that he had blood-shot eyes, and when standing he swayed from side to side. Defendants were asked about a gun and each denied any knowledge of one. It was not shown to them at the time it was found. According to the chief they told him they had not been in Lindsay that night and denied any connection with the robbery. They were taken to jail and the complaining witness positively identified appellant as her assailant, identified the gun as resembling the one used, identified the five receipts as the ones she placed in the bag, and identified a picture of the Buick as resembling the car she saw that night in the light of the neon sign.

At the trial, and after receiving the testimony of the chief that appellant denied any knowledge of the gun or of the robbery, the prosecution presented a witness who testified that this same gun in evidence, on the Sunday before, was taken from his coat which hung in the storeroom at his bar; that appellant was in the bar on that day assisting him part time in his duties, and he did not miss the gun until that evening.

This evidence was received over objections and only as to appellant.

Appellant testified he had this great amount of silver in his pockets because he had been playing poker that morning; that on the evening in question they had been playing "snooker" in Lindsay; that about 10:30 p. m. he and his brother drove toward Farmersville to check on the flood problem and that they were not involved in the robbery in any manner. He did admit telling the chief he knew nothing about the gun, and on cross-examination he admitted working, part time, for the bartender about the time this gun was taken from his clothes but claimed he knew nothing about its disappearance.

At the close of the evidence defendants moved to strike all testimony and evidence obtained as a result of the claimed unlawful search of defendants and the car. The motion was denied. This is the principal question presented on this appeal. It is appellant's contention that under the authority of *People* v. *Gale,* 46 Cal.2d 253 [294 P.2d 113], the facts in the instant case constitute only a road block and that the search of the defendants and their car was not justified on the ground that the officers had reasonable cause to believe a crime had been committed or that the search was made as an incident to a lawful arrest.

▇ The facts here related are quite different from those involved in the Gale case. In the instant case the arresting officers received an all-points bulletin regarding the robbery and describing the suspect. Based on the information received, they had reasonable grounds to stop defendants' car and question them as suspects. From the observation of appellant, dressed as he was, being a Mexican of his age, fitting the description of the suspect, riding in a car fairly well described, and observing the five receipts on the front seat of the car which were taken from the victim, the arrest of the suspects and search of them and the car were justified. (*People* v. *Jiminez,* 143 Cal.App.2d 671, 673 [300 P.2d 68]; *People* v. *Simon,* 45 Cal.2d 645, 650 [290 P.2d 531]; *People* v. *Martin,* 46 Cal.2d 106 [293 P.2d 52]; *Hatfield* v. *State* (Tex.Crim. App.) 276 S.W.2d 829, 830; *People* v. *Brown,* 354 Ill. 480 [188 N.E. 529, 530]; *People* v. *Baird,* 135 Cal.App.2d 109 [286 P.2d 832]; Pen. Code, § 836, subd. 3.)

· ▇ Appellant next complains because the officers also took a bone-handled pocket knife from each of defendants and

they were received in evidence. He contends they were not admissible because they were not connected with the offense, citing *People* v. *Orloff*, 65 Cal.App.2d 614 [151 P.2d 288]; and *People* v. *Milburn*, 89 Cal.App. 526 [265 P. 285]. We do not see the purpose of admitting these knives in evidence since the evidence shows the crime was committed by means of a gun. However, our examination of the transcript shows that no objection was made to the testimony in respect to the knives. In fact, counsel for defendant questioned the witness about them and the prosecution stipulated that the knives could go into evidence as marked for identification by defendant's counsel. No prejudicial error resulted. (*People* v. *Mason*, 65 Cal.App.2d 5, 10 [149 P.2d 742]; *People* v. *Beltowski*, 71 Cal.App.2d 18, 23 [162 P.2d 59]; *People* v. *Clemison*, 105 Cal. App.2d 679, 682 [233 P.2d 924].)

Claim is next made that the trial court erred in receiving in evidence the testimony of the bartender that he lost this gun under the circumstances indicated and that it was found in the possession of appellant. Defendant denied knowledge of the gun to the officers. Although evidence of separate offenses is not ordinarily admissible, the testimony was admissible to show that appellant might well have been possessed of this particular gun in committing the offense charged. (*People* v. *Bingham*, 44 Cal.App.2d 667, 668 [112 P.2d 941]; *People* v. *Cato*, 13 Cal.App.2d 391 [56 P.2d 1245].) The trial court, in ruling on the objection, stated that it was admissible as circumstantial evidence of possession of the gun.

Appellant thereafter offered no instruction indicating that the reception of this evidence should be limited to such purpose. He cannot now be heard to complain for the first time on appeal that the court should have given such an instruction on its own motion. (*People* v. *James*, 40 Cal.App.2d 740, 746 [105 P.2d 947]; *People* v. *Rubalcado*, 56 Cal.App. 440, 443 [205 P. 709]; *People* v. *Weitz*, 42 Cal.2d 338 [267 P.2d 275].)

Next it is argued that although appellant did not request an instruction to the effect that specific intent is a necessary element of robbery, such an instruction should have been given. The trial court did give an instruction in the language of section 211 of the Penal Code, the statutory definition of robbery. It was followed by an instruction to the effect that the intent with which the unlawful act charged was done, must be proved. The court was not, without request, under obligation to give a more particular charge regarding

specific intent. (*People* v. *Castile*, 3 Cal.App. 487, 488 [86 P. 746] ; *People* v. *Perhab*, 92 Cal.App.2d 430, 433 [206 P.2d 1133] ; *People* v. *Quinn*, 77 Cal.App.2d 734, 737 [176 P.2d 404].)

■ This same conclusion must be reached in reference to the claim that the court failed on its own motion to instruct in reference to the intent necessary to make one a principal in the crime of robbery. Appellant may not be heard to complain since the victim identified him as the principal and the perpetrator of the crime. Such an instruction was not vital to the disposition of appellant's case. (*People* v. *Davis*, 43 Cal.2d 661, 674 [276 P.2d 801] ; *People* v. *Scanlon*, 75 Cal. App. 620 [243 P. 63].)

■ A cautionary instruction regarding oral admissions of defendant was not offered nor given on the court's own motion. Appellant claims reversible error in this respect, citing *People* v. *Cornett*, 33 Cal.2d 33 [198 P.2d 877]. The claimed statements are those related by the defendant in which he told the officers they had not been in Lindsay that evening and appellant told one officer they had just come from Yokahl Valley. If true, they were only contradictory statements of a minor character, were not a key part of the people's proof, and did not amount to admission of fact which would connect defendants with the commission of the crime. These claimed statements would not constitute a confession of guilt or an extrajudicial admission which would in any manner constitute an acknowledgment of some fact or circumstance which in itself would be sufficient to authorize a conviction, or which tended toward the proof of the ultimate fact of guilt. (*People* v. *Bemis*, 33 Cal.2d 395, 398 [202 P.2d 82] ; *People* v. *Deloney*, 41 Cal.2d 832, 840 [264 P.2d 532].) No prejudicial error resulted. (*People* v. *Lowell*, 77 Cal.App.2d 341, 349 [175 P.2d 846] ; *People* v. *Macias*, 77 Cal.App.2d 71, 79 [174 P.2d 895] ; *People* v. *Koenig*, 29 Cal.2d 87, 94 [173 P.2d 1].)

■ Lastly, it is argued that it was prejudicial error for the trial court to fail to give defendant's proffered instruction in the language of CALJIC Number 26, i.e., if the evidence is susceptible of two constructions, each appearing to be reasonable, it is the duty of the jury to reject that which points to his guilt. As applied to defendant Richard Borbon, there would be some merit to the argument. He is not appealing. As to appellant, the People did not rely solely or even substantially on circumstantial evidence to convict him. He

322

was identified directly by the victim as the person who actually perpetrated the crime, and the court is not required to instruct, as indicated, where the circumstantial evidence produced is only incident to or corroborative of direct evidence connecting the defendant with the crime charged. (*People* v. *Harmon,* 89 Cal.App.2d 55, 59 [200 P.2d 32]; *People* v. *Monge,* 109 Cal.App.2d 141, 144 [240 P.2d 432]; *People* v. *Jerman,* 29 Cal.2d 189, 197 [173 P.2d 805]; *People* v. *Hatchett,* 63 Cal. App.2d 144, 155 [146 P.2d 469].)

The jury was fully instructed on the necessary proof required where the evidence produced was direct or circumstantial or both. No prejudicial error is noted.

Judgment and order denying a new trial affirmed.

Barnard, P. J., and Mussell, J., concurred.