[Crim. No. 1350. Fourth Dist. June 23, 1958.]

THE PEOPLE, Respondent, v. BUSTER ELROY
HARTMAN et al., Appellants.

Thomas Whelan for Appellants.

Edmund G. Brown, Attorney General, William E. James and Edward M. Belasco, Deputy Attorneys General, for Respondent.

MUSSELL, J.—Appellants Buster Elroy Hartman and John David Ray were charged with the crime of robbery in that by means of force and fear and against the will of Kenneth R. Olson and Lawrence H. Weaver, they took from the person of Kenneth R. Olson $47, in money, the personal property of Kenneth R. Olson. The information also contained the allegation that at the time of the commission of said offense appellants were armed with a deadly weapon, to wit, a .32 calibre revolver. They were tried before a jury and found guilty of robbery in the first degree. It was further found that they were armed with a deadly weapon at the time the robbery was committed. Motions for a new trial were denied. Imposition of sentences was suspended for five years and appellants were placed on probation under certain conditions, including the requirement that they spend the first year of the probationary period in the custody of the sheriff of San Diego County.

Appellants in their appeals from the judgments of conviction do not question the sufficiency of the evidence to support them but claim that the court erred in decisions and questions of law arising during the trial, in instructing the jury, and that the district attorney was guilty of prejudicial misconduct.

On the night of July 10, 1957, Kenneth Olson and Lawrence Weaver, members of the United States Navy, met the appellants, who were also in the Navy, in downtown San Diego. After some conversation, they all got into an automobile which appellant Hartman had borrowed from a friend and started to go to Tijuana. Before they left San Diego, appellant Ray went to his locker in the Locker Club and obtained a revolver, which he had previously borrowed, a pint of rum, and his jacket. Hartman drove the car to a filling station and bought gasoline and a stop was then made at a bar where Ray bought six 12-ounce cans of beer with money supplied by Olson. Hartman drove the car down a deserted country road and became so reckless that Ray took over the wheel. Several stops were

made and Ray finally drove the car to the side of the road and backed it into a wooded lane.

Hartman, who was then in the front seat of the car with Ray, turned around with the revolver in his hand and demanded Weaver's wallet. It appeared that Olson had the wallet and when Ray took it from him, he, Ray, demanded the "rest of the stuff." Hartman forced Olson to get out of the car, searched him and struck him on the back of the head. Ray took possession of the revolver and apparently it was accidentally discharged. Appellants threatened to kill Olson and Weaver if they recognized appellants and ordered Olson and Weaver to help push the car when appellants failed to get it started. Olson and Weaver were then ordered to run down the hill and appellants drove away. They were stopped by police officers at about 2 a. m. and the .32 revolver was found in the car. Hartman had a discharged .32 calibre shell in his hand and a .32 calibre live cartridge was found on his person. Appellants were arrested and taken to the San Diego Police Station where they remained until about 4 a. m., when they were taken to the Chula Vista Police Department. They were there fingerprinted and booked and then went to sleep.

At 10 a. m. Hartman was questioned by the officers and denied participation of the robbery. About half an hour later Ray was questioned and admitted that he and Hartman were with Olson and Weaver in the car. He stated that he and Hartman got out and decided to "roll" Olson and Weaver; that Hartman ordered Weaver out of the car and he (Ray) got the wallet from Olson; that Hartman hit both of the sailors; that when they got the car started, he ordered the sailors to run down the road and he fired the revolver over their heads to scare them and make them run faster. Hartman was then brought back to the police office and advised that appellants had been identified by the victims. He then admitted that the robbery had taken place. At the trial both appellants testified that they were with the victims on the night involved but denied a robbery was committed by them.

 Appellants first argue that their alleged confessions were inadmissible since their arraignment was unnecessarily delayed. This contention is without merit. Section 825 of the Penal Code provides that "The defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays; . . ." In the instant case the statements of appellants were taken well within the time

limit specified in said section. The record shows that appellants were booked at the Chula Vista jail at approximately 4 a. m. on July 11th and were permitted to go to sleep without interrogation. The record is silent as to when a magistrate might be available before whom they might have been taken for arraignment. Under the circumstances, it does not appear that the statements were taken while appellants were being illegally restrained or that there was unnecessary delay in their arraignment. In this connection appellants cite the case of *Mallory* v. *United States,* 354 U.S. 449 [77 S.Ct. 1356, 1 L.Ed.2d 1479], in which it was held that the confession of the defendant therein was inadmissible since it was obtained during a period of unlawful detention during which the defendant should have been arraigned. ▇ However, the facts in that case differ from those in the instant case and the Supreme Court of this state in *Rogers* v. *Superior Court,* 46 Cal.2d 3, 10 [291 P.2d 929], held that "The test ordinarily used by state courts to determine the admissibility of a confession is, whether, considering all the circumstances, it was freely and voluntarily made without any inducement held out to the accused." ▇ In the instant case the record supports the ruling of the trial court and the implied finding of the jury that the statements made by appellants to Detective Henrichon were freely and voluntarily made. Henrichon testified that he did not promise the appellants or either of them leniency "in any sense" and did not state to them that he could do anything toward getting them a lesser penalty. In this connection the court instructed the jury that:

"The law absolutely forbids you to consider a confession in determining the innocence or guilt of the defendant unless the confession was voluntarily made, and although the Court has admitted evidence tending to show that a defendant made a confession, you must disregard the asserted confession entirely unless you yourself, by your own weighing of all the evidence, your own judging of the credibility of the witnesses, and your own reasonable deductions conclude that the alleged confession not only was made, but was voluntary."

We find no prejudicial error in the court's ruling and in admitting the statements made by the appellants.

▇ Appellants contend that the district attorney was guilty of prejudicial misconduct when he referred to a lead pipe during his cross-examination of Hartman and again referred to it in his argument to the jury. The deputy district attorney was questioning Hartman as to the statements he

made to Officer Henrichon and Hartman was asked if he told the officer he had obtained a piece of lead pipe from the locker where he secured the gun. Hartman affirmed the statement made to the officer and there was no evidence introduced in the case that a lead pipe was used in the robbery. Furthermore, the jury was instructed not to consider for any purpose any evidence not received at the trial. In his argument to the jury the deputy district attorney again referred to the statement made by Hartman to the officer. However, no objection was made by counsel for appellants to these remarks. Under the circumstances the conduct of the deputy district attorney was not prejudicially erroneous.

Appellants claim that the trial court erred in refusing to give certain instructions offered by them and that no instructions were given covering the law treated in their offered instructions. The first of the eleven instructions refused was an instruction to the effect that "If the evidence is susceptible of two constructions, each appearing to be reasonable, it is the duty of the jury to reject that which points to his guilt . . ." Where, as here, the People did not rely on circumstantial evidence to convict the appellants, and the circumstantial evidence produced was only incident to or corroborative of the direct evidence connecting appellants with the crime charged, it was unnecesasry to give the offered instruction. (*People* v. *Borbon,* 146 Cal.App.2d 315, 321, 322 [303 P.2d 560].) The second offered instruction deals with the rules applicable to circumstantial evidence but in the instant case circumstantial evidence was only incidental to and corroborative of the direct evidence and therefore it was not necessary to give the offered instruction. (*People* v. *Jerman,* 29 Cal.2d 189, 197 [173 P.2d 805].) Offered instructions three, four, five and six relate to included offenses and were also unnecessary as the evidence was that appellants were guilty of robbery. (*People* v. *O'Brien,* 88 Cal. 483, 491 [26 P. 362].) The remaining instructions on larceny and intent were also unnecessary. (*People* v. *Griffin,* 36 Cal.App.2d 59, 61 [96 P.2d 989].) Examination of all of the instructions given show that the jury was fully and fairly instructed as to the elements of the crime of robbery and their application to the charges against the appellants.

Judgments affirmed.

Griffin, Acting P. J., and McCabe, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.